**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Carl R. Greene, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:10-cv-04529-RB |
| | : | |
| John F. Street, Chairman, | : | |
| Jannie L. Blackwell, | : | |
| Debra L. Brady, | : | |
| Patrick J. Eiding, and | : | |
| Nellie W. Reynolds d/b/a | : | |
| Philadelphia Housing Authority | : | |
| Board of Commissioners, | : | |
| Defendants. | : | |

**MOTION OF DEFENDANTS JOHN F. STREET, DEBRA L. BRADY,
PATRICK J. EIDING AND NELLIE W. REYNOLDS
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
PURSUANT TO FED.R.CIV.PROC. 12(b)(6)**

Defendants John F. Street, Debra L. Brady, Patrick J. Eiding and Nellie W. Reynolds

respectfully move this Court to dismiss the Amended Complaint of plaintiff Carl R. Greene

pursuant to Federal Rule of Civil Procedure 12(b)(6).  The grounds for this Motion are set forth

in the accompanying Brief.

Respectfully submitted,

**SPRAGUE & SPRAGUE**

By:  s/  Richard A. Sprague
Richard A. Sprague, Esquire
Thomas A. Sprague, Esquire
Joseph R. Podraza, Jr., Esquire
Geoffrey R. Johnson, Esquire
Lawrence R. Woehrle, Esquire
The Wellington Building, Suite 400
135 South 19th Street
Philadelphia, PA 19103
215-561-7681
Counsel for Defendants John F. Street,
Debra L. Brady, Patrick J. Eiding and
Nellie W. Reynolds

Date: October 22, 2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Carl R. Greene, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:10-cv-04529-RB |
| | : | |
| John F. Street, Chairman, | : | |
| Jannie L. Blackwell, | : | |
| Debra L. Brady, | : | |
| Patrick J. Eiding, and | : | |
| Nellie W. Reynolds d/b/a | : | |
| Philadelphia Housing Authority | : | |
| Board of Commissioners, | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF THE MOTION OF DEFENDANTS JOHN F. STREET,**
**DEBRA L. BRADY, PATRICK J. EIDING AND NELLIE W. REYNOLDS**
**TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**
**PURSUANT TO FED.R.CIV.PROC. 12(b)(6)**

Defendants John F. Street ("Chairman Street"), Debra L. Brady ("Brady"), Patrick J.

Eiding ("Eiding") and Nellie W. Reynolds ("Reynolds") (hereafter, collectively, "defendants"),

who together with Jannie L. Blackwell collectively comprise the Board of Commissioners

("Board") of the Philadelphia Housing Authority ("PHA"), by and through their undersigned

counsel, Sprague & Sprague, assert the following in support of their Motion to Dismiss Counts I,

II, III and IV of the Amended Complaint of plaintiff Carl R. Greene ("Greene").

### A.  Greene's Amended Complaint And The Standard For Granting
### Defendants' Motion to Dismiss

Greene was employed by PHA as its Executive Director pursuant to a written

Employment Agreement.  As set forth below, the Employment Agreement provided that Greene

could be terminated "for cause" under certain circumstances, but that he could also be terminated

"without cause."  Following allegations of multiple instances of egregious and reprehensible

conduct by Greene, including alleged instances of sexual harassment and a cover-up of that harassment, PHA placed Greene on paid administrative leave while investigating those allegations.  Greene responded by filing a Complaint in this Court against defendants solely in their official capacities as members of the PHA Board alleging a claim for denial of due process under 42 U.S.C. § 1983 and a claim for breach of contract.  Subsequent to the filing of Greene's Complaint, as a result of PHA's investigation, Greene was in fact terminated by PHA "for cause" in accordance with the terms of the Employment Agreement.  Greene responded by filing an Amended Complaint, **Exhibit "A"** hereto, reflecting the fact of his intervening termination, repleading his original claims, and setting forth additional purported state law causes of action against Chairman Street alone as more fully described below.

Greene's four count Amended Complaint asserts two claims against defendants, solely in their official capacities, based on the termination of his employment as PHA's Executive Director.  Count I alleges that Greene has been deprived of procedural due process of law in violation of 42 U.S.C. § 1983.  Greene asserts that he has a property interest in his continued public employment and that his discharge without notice and an opportunity to be heard deprived him of his property interest in violation of the Fourth and Fourteenth Amendments of the United States Constitution (¶¶ 85, 86).  As set forth below, because Greene could be terminated "without cause," he had no property interest in his continued employment and no attendant due process right.  Additionally, defendants are immune from Greene's § 1983 claim both by well-established constitutional law principles and by statute.

Count II of Greene's Amended Complaint purports to set forth a state law claim for breach of contract.  As the dismissal of Greene's Count I § 1983 claim will leave the Court

2

without any jurisdictional basis to consider any of Greene's remaining state law claims, Greene's

Complaint should be dismissed in its entirety.[1]  In any event, while Greene avers that his

Employment Agreement was with PHA (¶ 92), not defendants, and that it was breached by PHA

(¶¶ 95, 96), he purports to hold defendants liable notwithstanding that he had no contract with

them.  Greene's breach of contract claim against defendants must therefore be dismissed.

Count III purports to set forth a claim against Chairman Street for defamation (¶¶ 101-

105), while Count IV purports to set forth a claim against Chairman Street for false light-

invasion of privacy (¶¶ 107-111).  Aside from the dismissal of Greene's Count I § 1983 claim

leaving the Court without jurisdiction to consider these state law claims against Chairman Street,

Chairman Street is immune from such claims as more fully described below.  Additionally,

Greene's state law tort claims are inadequately pleaded and fail to state claims in any event.

The standard for granting a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is well

known.  The Court must accept as true all well-pled facts and all reasonable inferences drawn

therefrom.  *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990).  To survive a

motion to dismiss, a party's factual allegations must raise a right to relief above the speculative

level, and a complaint must allege facts suggestive of illegal conduct.  *Bell Atlantic v. Twombly,*

550 U.S. 544, 563 n.8 (2007); *Phillips v. County of Allegheny,* 515 F.3d. 224, 232 (3d Cir. 2008).

Although a court must accept as true the factual allegations in a complaint, this does not extend

---

[1] Where the claim over which a district court has jurisdiction is dismissed before trial, the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so.  *See, e.g., Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir. 2000).  At this stage of the action, none of these considerations provide sufficient justification for the Court's retention of jurisdiction.

to legal conclusions.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  As set forth below, none

of Greene's claims come close to raising a right to relief, speculative or otherwise.

**B.  Greene's 42 U.S.C. § 1983 Claim Fails To State A Claim Upon Which Relief Can Be
Granted Because Greene Has No Constitutionally Protected Property
Interest In His Continued Public Employment And Accordingly
<u>Has No Right To Procedural Due Process Regarding His Termination</u>**

Greene alleges in Count I of his Amended Complaint that he was denied procedural due

process (¶ 90) in violation of 42 U.S.C. § 1983.  "To state a claim under § 1983 for deprivation

of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual

interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or

property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v.

Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir. 2006).  The threshold inquiry is whether the

plaintiff in fact has the claimed property interest he asserts to have been violated.  *See, e.g.,

Piekutowski v. Township of Plains,* 2006 U.S. Dist. LEXIS 82012, * 8 (M.D. Pa. 2006).

Defendants move for the dismissal of Greene's § 1983 claim because, as a matter of well-

established law, Greene has no constitutionally protected property interest in his employment.

The terms and conditions of Greene's employment are governed by his March 29, 2007

Employment Agreement with PHA (a copy of which is appended as Exhibit "A" to Greene's

Amended Complaint).  Under the terms of that Employment Agreement, Greene may be

terminated by PHA either for cause (¶8(a)) or without any cause whatsoever (¶8(d)).  As

explained below, because Greene's employment is not terminable by PHA "only for cause," he

has no constitutionally protected property right in his employment and his § 1983 claim must

accordingly be dismissed.

Paragraph 8 of the Employment Agreement sets forth the provisions for termination of

Greene's employment.  Paragraph 8(a) sets forth the terms for Greene's termination by PHA for

cause and states:

>    (a)    Termination by PHA for Cause.  This Agreement may be
>    terminated immediately for cause upon written notice to MR.
>    GREENE to such effect.  Cause as used in this Section is defined
>    to mean only:
>
>    >    (i)    A material act or acts of dishonesty on MR.
>    >    GREENE's part, which is criminal in nature,
>    >    intended to result directly or indirectly in MR.
>    >    GREENE's substantial gain or personal enrichment
>    >    at PHA's expense, and which results in
>    >    demonstrable material injury and damage to PHA;
>
>    >    (ii)    MR. GREENE's willful and intentional
>    >    misconduct, recklessness, gross negligence and
>    >    failure to substantially perform his duties hereunder,
>    >    other than a failure resulting from MR. GREENE's
>    >    incapacity or illness, if MR. GREENE's willful and
>    >    intentional misconduct, recklessness, gross
>    >    negligence and failure results in a demonstrable
>    >    material injury and damage to PHA; or
>
>    >    (iii)    Lack of funding.

Paragraph 8(c), however, explicitly provides that PHA may also terminate Greene *without* cause:

>    (c)    Termination Without Cause.  Either party to this
>    Agreement may terminate the Agreement without cause, but only
>    upon ninety (90) days' notice to the other party.

Property rights protected under the Fourteenth Amendment due process clause are not

created by the Constitution.  They are created by state law and, under certain limited

circumstances, are afforded constitutional protection from infringement by the government.  To

determine whether an alleged property right exists, the courts accordingly look to state law.  *See*

*Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) ("Property interests are not created by the

Constitution.  Rather they are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law."). *See also Kelly v. Borough of Sayreville,* 107 F.3d 1073, 1077 (3d Cir. 1997) ("State law creates the property rights protected by the Fourteenth Amendment."); *Brown v. Trench,* 787 F.2d 167, 170 (3d Cir. 1986) ("State law determines whether . . . a property interest exists.").[2]

Moreover, as our Court of Appeals has observed, not all property interests created by contract are clothed with constitutional protection. *See, e.g., Boyd v. Rockwood Area School District,* 105 Fed. Appx. 382, 386 (3d Cir. 2004); *Linan-Faye Construction Company v. Housing Authority,* 49 F.3d 915, 932 (3d Cir. 1995); *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1397 (3d Cir. 1991); *See also Piekutowski v. Township of Plains,* 2006 U.S. Dist. LEXIS 82012, * 9-10 (M.D.Pa. 2006). In the public employment context, federal courts have significantly limited the circumstances under which they will recognize a constitutional dimension in an employee-public employer contract dispute. In *Reich v. Beharry*, 883 F.2d 239 (3d Cir. 1989), for example, an attorney hired as special prosecutor in Washington County brought an action under 42 U.S.C. § 1983 after the county refused to pay for his services as required under the attorney's contract with the county. The district court dismissed the attorney's complaint for failure to state a claim upon which relief can be granted. In affirming, the Third Circuit stated:

> So far as we have been able to determine, every court of appeals that has directly confronted the issue has concluded that although state contract law can give rise to a property interest protectable by procedural due process, not every interest held by virtue of a

---

[2] The due process referenced in these cases is procedural due process. The courts have concluded that state law cannot create any property right protected by substantive due process as only a right created under the United States Constitution will be protected by substantive due process. *Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d Cir. 2000).

> contract implicates such process.  Many . . . courts have observed
> that if every breach of contract by someone acting under color of
> state law constituted a deprivation of property for procedural due
> process purposes, the federal courts would be called upon to pass
> judgment on the procedural fairness of the processing of a myriad
> of contractual claims against public entities.  We agree that such a
> wholesale federalization of state public contract law seems far
> afield from the great purposes of the due process clause.

*Reich*, 883 F.2d at 242 (citations omitted).

   In *Unger v. National Residents Matching Program*, 928 F.2d 1392 (3d Cir. 1991), the

Third Circuit affirmed the dismissal of an action by a medical resident challenging the

termination of her residency program and claiming a deprivation of property and liberty interests

in the residency program without due process of law.  The Court surveyed the relevant

precedents in this and other jurisdictions and reached the following conclusion:

> Today it is beyond dispute that a contract with a state entity can give
> rise to a property right protected under the Fourteenth Amendment
> [citation omitted].  Nevertheless, the Supreme Court has never held
> that every state contract gives rise to a property interest protected
> under the Fourteenth Amendment [citation omitted].  Thus, the
> question becomes where to draw the line.
>
> * * *
>
> Relevant Supreme Court cases and the cases we have cited from
> the First, Second, Fifth, Seventh and Ninth Circuits disclose two
> general types of contract rights that have been found to be property
> protected under the Fourteenth Amendment.  As the Second
> Circuit noted in *S & D Maintenance*, 844 F.2d at 966, the first type
> arises where the contract confers a protected status, such as those
> "characterized by a quality of either extreme dependence in the
> case of welfare benefits, or permanence in the case of tenure, or
> sometimes both, as frequently occurs in the case of social security
> benefits."  *The second, albeit related type of property interest
> arises where the contract itself includes a provision that the state
> entity can terminate the contract only for cause. Id.* at 967; *see
> also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39,
> 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985) (recognizing a property
> right created by a for-cause termination provision); *Arnett v.
> Kennedy*, 416 U.S. 134, 166-67, 40 L. Ed. 2d 15, 94 S. Ct. 1633

(1974) (same).

*Unger*, 928 F.2d at 1399 (emphasis added).

In *Linan-Faye Construction Co. v. Housing Authority of the City of Camden*, 49 F.3d 915 (3d Cir. 1995), the Third Circuit affirmed summary judgment in favor of a Housing Authority, and against a contractor, finding that the contractor had no protectable property interest in its construction contract in light of a "termination for convenience" clause.  Relying on *Unger* and *Reich*, the court found Linan-Faye's interest was not constitutionally protected because it could be terminated for reasons other than "for cause."  As stated by the Court:

> Linan-Faye's contract with HACC does not fall into either of the
> two categories we delineated in *Unger*.  The contract does not
> confer a protected status on the plaintiff and the state entity could
> terminate the contract for reasons other than for cause.  Indeed, it
> could be terminated for convenience.  To grant Linan-Faye a
> remedy under § 1983 would create the wholesale federalization of
> state public contract law that concerned us in *Unger* and *Reich*.
> Accordingly, the district court did not err in granting summary
> judgment for HACC on Linan-Faye's claim.

*Linan-Faye Construction Co.*, 49 F.3d at 932.  *Linan-Faye* is controlling herein.  Because Greene's Employment Agreement with PHA could be terminated for reasons other than for cause, he had no property interest in that contract entitling him to protection by the due process clause of the Fourteenth Amendment.  Greene's § 1983 claim must therefore be dismissed.

More recently, in an employee's § 1983 action based upon an employment contract with a "termination without cause" provision essentially identical to that in Greene's Employment Agreement, the Third Circuit affirmed the district court's dismissal of that claim on the basis that it was an at-will employment contract and the employee accordingly had no legitimate claim of entitlement to his job and thus no protected property interest entitling him to procedural due process.  In *Goodman v. Hasbrouck Heights School District,* 2007 U.S. Dist. LEXIS 45684

8

(D.N.J. 2007), the plaintiff was employed as a teacher pursuant to an employment contract which provided: "It is hereby agreed by the parties hereto that this contract may at any time be terminated by either party giving to the other 60 days' notice in writing of the intention to terminate the same."[3] Citing *Unger, supra,* the district court dismissed the teacher's procedural due process claim, holding that "in the present case, Plaintiff's contract, being terminable for any reason on 60 days notice, does not create for Plaintiff a protectable property interest in his employment. This conclusion does not change in light of Plaintiff's claim that he was not afforded the requisite notice prior to his alleged termination." *Id.* at *16. The district court concluded that, at most, the teacher had simply set forth a claim for breach of contract.

> Importantly, the 60-day notice provision in the contract neither implied permanence in Plaintiff's employment nor provided Plaintiff with any substantive protection against termination. Consequently, [the employer's] alleged failure to provide the appropriate notice did not deprive Plaintiff of due process, but rather such failure may, at most, support a claim for breach of contract under state law.

*Id.* at * 17.

In affirming the district court's dismissal of the teacher's § 1983 claim in a non-precedential opinion, the Third Circuit stated:

> The employment contract, however, provides that the contract may be terminated by either party for any reason, *i.e.,* an at-will arrangement. An at-will employment contract does not create a protected property interest in one's job. *See Unger v. National Residents Matching Program,* 928 F.2d 1392, 1397 (3d Cir. 1991) ...
>
> Although the contractual requirement of sixty days written notice prior to termination may provide the basis for a state law breach of contract claim against the School District, it does not bear upon the question

---

[3] Greene's Employment Agreement provided as follows at paragraph 8(c): "Either party to this Agreement may terminate the Agreement without cause, but only upon ninety (90) days' notice to the other party."

> whether [the teacher] has a protected property interest in his job.
>
> * * *
>
> Because [the teacher] had no legitimate claim of entitlement to his
> teaching job and thus no protected property interest, his procedural
> due process claim fails as a matter of law.

*Goodman v. Hasbrouck Heights School District,* 275 Fed. Appx. 105, * 108 (3d Cir. 2008).[4]

Accordingly, because Greene's employment with PHA was plainly terminable without any cause whatsoever, he had no constitutionally protected interest in his continued employment with PHA and accordingly had no right to procedural due process regarding his termination. Greene's § 1983 claim must accordingly be dismissed.

### C.  Greene's 42 U.S.C. § 1983 Claim Also Fails To State A Claim Upon Which Relief Can Be Granted Because Defendants Are Immune From Suit

Even if Greene had brought his § 1983 action against defendants in their individual capacities, Count I would nevertheless fail to state a claim because defendants have qualified immunity.  "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1981); *Good v. Dauphin County Social Services,* 891 F.2d 1087, 1091 (3d Cir. 1989).

As in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated.  *See Graham v. Connor,* 490 U.S. 386, 394 (1989). As stated by the Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833 (1998):

---

[4] Pursuant to Fed.R.A.P. 32.1, there is no prohibition on a party's citing to a federal judicial opinion designated as "non-precedential" if that opinion was issued on or after January 1, 2007.

> ... as we have held, the better approach to resolving cases in which
> the defense of qualified immunity is raised is to determine first
> whether the plaintiff has alleged a deprivation of a constitutional
> right at all.  Normally, it is only then that a court should ask whether
> the right allegedly implicated was clearly established at the time of
> the events in question.  *See Siegert v. Gilley,* 500 U.S. 226, 232, 114
> L.Ed.2d 277, 111 S.Ct. 1789 (1991) ("A necessary concomitant to the
> determination of whether the constitutional right asserted by a plaintiff
> is 'clearly established' at the time the defendant acted is the determination
> of whether the plaintiff has asserted a violation of a constitutional right
> at all," and courts should not "assume, without deciding, this preliminary
> issue").

523 U.S. at 842.  As set forth in section B above, Greene had no "clearly established" right to

procedural due process at the time of his termination -- indeed, he had no such right at all -- and

defendants would be qualifiedly immune from his § 1983 claim.

Additionally, even had Greene sued defendants in their personal capacities,

Pennsylvania's Housing Authorities Law, 35 P.S. § 1541, *et seq.*, precludes their liability with

respect to Greene's Employment Agreement.  The powers of a Housing Authority, including

PHA, are set forth therein and include the power to enter into employment agreements such as

Greene's and to prescribe the terms and conditions of same.  35 P.S. § 1550 (gg).  The Housing

Authority Law specifically provides, in relevant part: "Under no circumstances shall the mayor

or any individual employee, official agent, attorney or member of the Authority be personally

liable for any provision contained in any such employment agreement."  *Id.*


### D.  Greene's Breach Of Contract Claim Fails To State A Claim Against Defendants

Count II of the Amended Complaint purports to set forth a claim for breach of contract.

Unfortunately for Greene, he purports to assert that claim against defendants -- not PHA.  As

Greene  admits: "Mr. Greene and PHA entered into an Employment Agreement on March 29,

11

2007."  Amended Complaint, ¶ 92.[5]  Greene asserts that "PHA breached its Employment Agreement" with him by placing him on administrative leave and thereafter terminating his employment, purportedly without cause.  Amended Complaint, ¶¶ 95, 96.  Nevertheless, while Greene avers the existence of a contract with PHA -- which is not named as a party -- he purports to hold defendants liable on the alleged basis that their actions are "in direct violation of the terms off" the Employment Agreement.  Amended Complaint, ¶ 98.

Nowhere does the Amended Complaint allege the existence of an employment contract between Greene and any defendant.  As such, Greene cannot prevail on a breach of contract claim against any defendant.  "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract."  *Smarttran, Inc. v. Alpine Confections, Inc.,* 352 Fed. Appx. 650, 656 (3d Cir. 2009) (quoting *Electron Energy Corp. v. Short,* 597 A.2d 175, 177 (Pa. Super. 1991)); *Hardee -Guerra v. Shire Pharmaceuticals,* 2010 U.S. Dist. LEXIS 88011, *12 (E.D. Pa. 2010); *Viso v. Werner,* 369 A.2d 1185, 1187 (Pa. 1977).

In any event, any breach of contract claim against defendants based on Greene's Employment Agreement is statutorily precluded by the Housing Authority Law which, as set forth above, specifically provides that, "Under no circumstances shall ... any individual employee, official agent, attorney or member of the Authority be personally liable for any provision contained in any such employment agreement."  35 P.S. § 1550 (gg).

### E.  Greene's Defamation And False Light-Invasion Of Privacy Claims Against Chairman Street Are Barred By High Public Official Immunity

---

[5] The Employment Agreement itself (Exhibit "A" to Greene's Amended Complaint) specifically recites in its initial paragraph that it is " ... by and between the Philadelphia Housing Authority, a public body, corporate and politic, ... and Carl R. Greene ... ."

Counts III and IV of Greene's Amended Complaint purport to plead state law causes of action for defamation and false light-invasion of privacy, respectively.  Because both claims as pleaded by Greene are barred as a matter of law under the Pennsylvania doctrine of high public official immunity, they must be dismissed.

Greene has brought these claims against Chairman Street solely in his capacity as Chairman of the PHA Board who at all relevant times acted in that capacity.  Amended Complaint, ¶ 8.  Chairman Street served in an appointed position as a member of PHA's Board pursuant to the Housing Authorities Law, 35 P.S. § 1545, and additionally, he was selected by the other PHA Commissioners as Chairman, again pursuant to the Housing Authorities Law, 35 P.S. § 1547.  PHA itself is a "public body, corporate and politic, created and organized in accordance with the Housing Authorities Law, 35 P.S. § 1541, *et seq.*," Amended Complaint at Exhibit "A," and indeed, exercises the "public powers of the Commonwealth as an agency thereof, which powers shall include all powers necessary or appropriate to carry out and effectuate the purpose and provisions of this [Housing Authorities Law] . . . ."  35 P.S. § 1550.  Section 1550 includes within a litany of PHA's enumerated powers, in addition to the general grant of powers, the power to "conduct examinations and investigations and to hear testimony and take proof, under oath or affirmation, at public or private hearings, on any matter material for its information."  35 P.S. § 1550(y).

Thus, it is not surprising that PHA, by virtue of its general grant of power under 35 P.S. § 1550, and its express grant of statutory authority to conduct investigations "on any matter material for its information," passed a resolution on August 26, 2010, authorizing Chairman Street to conduct an investigation into the grave allegations made against Greene with respect to

13

his professional conduct.  Amended Complaint,  ¶¶ 33, 34, 37 and 38 and Exhibit "H."

Chairman Street conducted that investigation as authorized by the PHA Board and reported to

the PHA Board at its regular meeting on September 23, 2010.  Amended Complaint, ¶ 70.  The

PHA Board voted to terminate Greene at that meeting.  Amended Complaint, ¶ 71.

     In Count III of the Amended Complaint, Greene asserts a claim for defamation.  Greene

fails to identify with any particularity the specific statements claimed to be defamatory despite

peppering that pleading with allegations of various snippets of comments attributed to Chairman

Street in various newspaper articles.  In paragraph 101 of his Amended Complaint, Greene

alleges that Chairman Street "made defamatory statements about Mr. Greene in press

conferences and other correspondence with members of the press," but the only references by

Greene alleged to be "defamatory" are that:

    1.    "'Other women' had come forward to complain about Mr.
           Greene;"
    2.    "references to 'others whose identities we may never
know'         as 'target females' of Mr. Greene;" and
    3.    "comparisons of Mr. Greene to a drug addict and a sex addict."

Amended Complaint, ¶ 101.  Significantly, in addition to the myriad other defects in Greene's

purported defamation claim, Greene never pleads that the statements attributed to Chairman

Street are false as required under Pennsylvania law.


     In Count IV, Greene alleges a claim for false light-invasion of privacy claiming that

Chairman Street publicized past sexual harassment claims in a way that places Greene in a false

light, specifically, that Chairman Street "paraded allegations of sexual harassment before the

news media, labeled Mr. Greene a 'serial sexual harasser,' and repeatedly referenced other

14

unnamed and unidentifiable women who he claims reported allegations of sexual harassment." Amended Complaint, ¶ 107. Defendants would again note, as will be further amplified below, that Greene never alleges that these statements are false.

Accepting all Greene's averments as true, his claims for defamation and false light-invasion of privacy must be dismissed as a matter of law because Chairman Street is cloaked with high government official immunity which shields him from liability.

### 1. Elements Of Immunity

Pennsylvania common law recognizes a doctrine of absolute immunity for high public officials. *Smith v. School District of Philadelphia*, 112 F. Supp.2d 417, 425 (E.D. Pa. 2000). In *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001), the Pennsylvania Supreme Court described the broad parameters of this immunity, stating this absolute privilege "is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice provided the statements are taken in the course of the official's duties or powers and within the scope of his authority." Moreover, the immunity extends to all manner of suits as long as the conduct complained of was undertaken by a high public official within the course and scope of his authority. *Jonnet v. Bodick*, 431 Pa. 59, 244 A.2d 751, 753 (1968). Greene's own Amended Complaint establishes that Chairman Street enjoys this immunity.

### (a) "High" Public Official

The Pennsylvania courts have held that the public interest requires that all "high ranking officers" be protected from tort liability. *Montgomery v. City of Philadelphia*, 392 Pa. 178, 140 A.2d 100, 105 (1958). The factors which must be examined to determine whether a particular

officer is protected include "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions."  Further, to be considered a high public official, the scope of an individual's responsibilities to the governmental unit must encompass duties such as "responsibility for independent initiation of administrative policy regarding some sovereign function of ... government."  *Rok  v. Flaherty*, 106 Pa. Commw. 570, 574, 527 A.2d 211, 213 (1987).

In *Matta v. Burton*, 721 A.2d 1164 (Pa.Commw. 1998), the Court had "no difficulty in concluding  . . . that a school board director is sufficiently important and possesses such discretionary authority as to qualify as a high public official."  *Matta*, 721 A.2d at 1166.  Thus, the Court affirmed the dismissal of a contractor's defamation action against the School Board Director for the City of Duquesne arising out of the Director's letter to the editor of a newspaper accusing the contractor of misconduct and malfeasance in a school renovation project.  Not only did the Court easily conclude that the Director was a high public official, the Court also determined that the letter to the editor was within the course of her official duties and within the scope of her authority because the Director had the authority to oversee the administration of school district contracts, and because the Director was informing the public of what she perceived to be the mismanagement of a large public contract.  *Matta*, 721 A.2d at 1166-67.

PHA, as a Housing Authority under the Housing Authorities Law, exercises broad, extensive and vital powers and authority.  35 P.S. §1541, *et seq.*  As pleaded by Greene, that power and authority is exercised through the Board which is charged with overseeing the operation of PHA.  Amended Complaint, ¶ 7.  Further, as pleaded by Greene, Chairman Street is

the Chairman of the Board of PHA and at all times was acting in that capacity.  Amended

Complaint, ¶ 8.  Additionally, with regard to the allegations regarding Greene, Chairman Street,

in addition to his broad authority as a PHA Commissioner and indeed the Chairman of the

Board, had been specially empowered to investigate the accusations against Greene.  Amended

Complaint, ¶¶ 36, 38.

### (b)  Course Of Official's Duties Or Powers

The privilege is extended to those "statements and actions which are, in fact, 'closely

related' to the performance of those official duties."  *Mosley v. Observer Publishing Company*,

422 Pa. Super. 255, 619 A.2d 343, 346 (1993).  It is clear from Greene's own Amended

Complaint that Chairman Street's statements were closely related to the performance of his

official duties.  Indeed, Greene alleges that Chairman Street at all relevant times acted in his

capacity as Chairman of the PHA Board, Amended Complaint, ¶ 8, and further pleads that

Chairman Street was expressly empowered to investigate the accusations against Greene.

Amended Complaint, ¶¶ 36, 38.

The earliest remark attributed to Chairman Street in Greene's Amended Complaint was on

(*albeit* a remark that does not form a part of Greene's defamation or false light claims) was on

August 25, 2010, Amended Complaint at ¶ 31, at which time a public controversy raged arising

out of Greene's own misconduct.  Amended Complaint, ¶¶ 24, 25 and 26 and Exhibits "B," "C,"

"D,"  "E" and "F" to Amended Complaint.  This controversy was fueled by the fact that there

were extensive media accounts of Greene's misconduct, yet Greene had absented himself and

failed or refused to comment on the accusations against him.  *See* Amended Complaint at Exhibit

"B" ("Greene was unavailable for comment"), Exhibit "C" ("[a]ttempts to reach Greene

yesterday were unsuccessful"), Exhibit "D" ("[a]ttempts to reach Greene on Friday about the lien

and the lawsuit were unsuccessful.  Calls to the PHA management offices went directly to voice

mail, and no one returned messages asking for Greene.  Kirk Dunn, a public relations specialist

who does work for the agency, said Greene had not responded to his calls either."), Exhibit "E"

("Greene -- who [PHA spokesman] Tillman said told his staff that he would be out of the office

again today -- has not been heard from publicly since news broke last week that his $615,000

Naval Square town house was in foreclosure."), Exhibit "F" ("Greene has not shown up for work

the last three days.").  In other words, Greene, through his actions, created a firestorm, then

walked away leaving PHA and, in particular, Chairman Street to deal with it.

Chairman Street was forced into a situation where as a public official, and in the public

interest, he had to respond to a crisis in the form of accusations of grave misconduct created by

Greene himself.  Because Greene absented himself from the situation, Chairman Street was put

in a position where he was compelled to respond to the allegations made against Greene,

accusations which were clearly within the appropriate realm of public inquiry given the nature of

PHA's activities and the amount of public funds and property under its control.

### (c)  Scope Of Official's Authority

Accepting Greene's allegations as true, Chairman Street was within the scope of his

authority in making any statement regarding the accusations against Greene.  Chairman Street

was acting both in his capacity as Chairman of PHA's Board and in the capacity as the

designated responsible official for the investigation into the accusations against Greene.  As in

*Matta*, Chairman Street was clearly acting within the scope of his authority.

Based on the foregoing, Chairman Street is plainly entitled to high public official

immunity with respect to the statements attributed to him by Greene and Counts III and IV of

Greene's Amended Complaint accordingly fail to state viable claims against Chairman Street.

## F.  Greene's Amended Complaint Fails To<br>Adequately Plead A Cause Of Action For Defamation

Without question, under Pennsylvania law, Greene is a public figure for purposes of

defamation.  *Smith v. Wagner*, 588 A.2d 1308 (Pa.Super. 1991) (housing authority director is a

public figure for purposes of defamation action).  As a public official, Greene must plead and

prove actual malice.  *Smith*, 588 A.2d at 1311 (housing authority director "must aver that

defendants acted with 'actual malice'; that is, knowledge or reckless disregard of the falsity of

the objectionable statements.").  *See also New York Times v. Sullivan*, 376 U.S. 254 (1964);

*Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 439 A.2d 652 (1981).  Greene has failed

to allege actual malice and therefore this count fails to adequately plead a claim for defamation.

Significantly, Greene's failure to plead actual malice is compounded by his failure to

plead that the allegedly defamatory statements are false.  It is the burden of a public figure

plaintiff to plead and prove the falsity of the allegedly defamatory publication.  *Philadelphia*

*Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986); *Ertel v. Patriot News Co.*, 544 Pa. 93,

101, 674 A.2d. 1038, 1041 (1996).  Greene has not pleaded the falsity of the allegedly

defamatory publications and therefore has failed to state a claim for defamation.

## G.  Greene's False Light-Invasion Of Privacy Claim Fails As A Matter Of Law<br>Because The Statements At Issue Do Not Relate To Private Facts<br>But Rather Involve Matters Of Legitimate Public Concern

The tort of false light–invasion of privacy involves "publicity that unreasonably places

the other in a false light before the public."  *Strickland v. University of Scranton*, 700 A.2d 979,

19

987 (Pa. Super. 1997). "The elements to be proven are publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. 1999); *Strickland*, 700 A.2d at 987 (lawsuit against plaintiff is a public, not a private fact). *See also Marricone v. Experian Information Solutions, Inc.*, 2009 U.S. Dist. LEXIS 93003 (E.D. Pa. Oct. 6, 2009) (publication of the existence of a judgment is a public fact not a private fact).

Greene bases his false light–invasion of privacy claim on allegations that Chairman Street "paraded allegations of sexual harassment before the news media, labeled Mr. Greene a 'serial sexual harasser,' and repeatedly referenced other unnamed and unidentifiable women who he claims reported allegations of sexual harassment." *See* Amended Complaint, ¶ 107. These issues were squarely in the public domain prior to any statement by Chairman Street.

In fact, as pleaded in Greene's Amended Complaint at ¶ 26 and in Exhibits "E" and "F," Greene had been accused in a letter sent to Governor Edward G. Rendell, Mayor Michael Nutter, and others of *inter alia* "serial predatory sexual misconduct," and inappropriate touching, grabbing and groping of a female employee. A newspaper article attached to Greene's Amended Complaint also discusses a second sexual harassment complaint that had been filed against Greene by a PHA employee and settled. *See* Exhibit "F." Indeed, according to newspaper reports attached to Greene's Amended Complaint, a complaint had been filed against Greene with the Pennsylvania Human Relations Commission, and those reports relate claims by a former PHA attorney who, having received numerous complaints of sexual harassment, "started asking questions," and was fired. *See* Exhibit "E."

Greene was the highly-paid Executive Director of a statutorily-created public agency

who through his own actions and omissions, conduct and misconduct, created a raging public controversy prior to any statement by Chairman Street.  The alleged statements at issue in Greene's false light-invasion of privacy claim pertain to Greene's conduct in the nature of sexual harassment as the Executive Director of PHA.  These are not "private facts," and indeed, to the contrary, involve matters of legitimate public concern.  As such, Greene's Count IV false light-invasion of privacy claim fails to state a cause of action as a matter of law.

### H.  Greene's Defamation And False Light–Invasion of Privacy Claims Against Chairman Street In His Capacity As Chairman Are Actions Against PHA And Therefore Barred By Either Sovereign Immunity Or Governmental Immunity

Greene's defamation and false light-invasion of privacy claims against Chairman Street name Chairman Street only in his official capacity as Chairman of the PHA Board.  Official capacity suits are only another way of pleading an action against an entity of which the officer is an agent, and are treated as an action against the entity.  *Kentucky v. Graham*, 479 U.S. 159, 165-66 (1985).  Thus, Greene's state law tort claims effectively are being prosecuted against PHA itself.

PHA is an agency of the Commonwealth, 35 P.S. § 1541, and although there is some question as to whether, for immunity purposes, it is a Commonwealth agency or a local agency, *see James J. Gory Mech. Contr., Inc. v. Philadelphia Housing Auth.*, 855 A.2d 669 (Pa. 2004), it is most certainly one or the other and thus has a statutory immunity from suit except in enumerated circumstances.  *See* 42 Pa.C.S. § 8521 (Sovereign immunity generally); 42 Pa.C.S. § 8522 (Exceptions to sovereign immunity); 42 Pa.C.S. § 8421 (Governmental immunity generally); 42 Pa.C.S. § 8542 (Exceptions to governmental immunity).  No exception in these statutory provisions applies to Greene's state law tort claims, nor is there any non-statutory

21

exception, and therefore Counts III and IV fail to state actionable claims.

## I.  Conclusion

Because Greene's employment with PHA was plainly terminable without any cause whatsoever, he had no constitutionally protected property interest in his continued public employment and accordingly had no right to procedural due process regarding his termination. Greene's § 1983 claim accordingly fails to set forth a right to relief.  Indeed, even had Greene sued defendants personally, his § 1983 would fail because, as he had no "clearly established" right to procedural due process at the time of his termination -- indeed, no such right at all -- defendants would accordingly be cloaked with immunity from Greene's § 1983 claim, as well as the protection from liability afforded them by the Housing Authorities Law with respect to employment contracts.  Greene's § 1983 claim must accordingly be dismissed.

Where the claim over which a district court has jurisdiction is dismissed before trial, the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so.  *Hedges v. Musco, supra*.  As the dismissal of Greene's § 1983 claim leaves only state law claims for breach of contract, defamation, and false light-invasion of privacy -- each of which fail to state a claim in its own right -- those state law claims should be dismissed in their entirety for lack of jurisdiction.  Alternatively, the state law claims must be dismissed both because defendants are immune from such claims and because Greene has failed to plead claims upon which relief can be granted.

Respectfully submitted,

**SPRAGUE & SPRAGUE**


By: <u>s/  Richard A. Sprague</u>
     Richard A. Sprague, Esquire
     Thomas A. Sprague, Esquire
     Joseph R. Podraza, Jr., Esquire
     Geoffrey R. Johnson, Esquire
     Lawrence R. Woehrle, Esquire
     The Wellington Building, Suite 400
     135 South 19th Street
     Philadelphia, PA 19103
     215-561-7681
     Counsel for Defendants John F. Street,
     Debra L. Brady, Patrick J. Eiding and
     Nellie W. Reynolds

Date: October 22, 2010

## <u>CERTIFICATE OF SERVICE</u>

I, Lawrence R. Woehrle, attorney for defendants John F. Street, Debra L. Brady, Patrick

J. Eiding and Nellie W. Reynolds, hereby certify that a true and correct copy of the

accompanying Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to

Fed.R.Civ.Proc. 12(b)(6) was served this date on the following *via hand delivery*:

Clifford E. Haines, Esquire
Haines & Associates
1835 Market Street, Suite 2420
Philadelphia, PA 19103
Counsel for Plaintiff

Richard L. Scheff, Esquire
Stephen A. Madva, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
Counsel for Defendant Jannie L. Blackwell

By: <u>s/  Lawrence R. Woehrle</u>
Lawrence R. Woehrle

Date: October 22, 2010