IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL R. GREENE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN F. STREET, Chairman | : | NO. 10-4529 |
| JANNIE L. BLACKWELL, | : | |
| DEBRA L. BRADY, | : | |
| PATRICK J. EIDING, and | : | |
| NELLIE W. REYNOLDS d/b/a | : | |
| PHILADELPHIA HOUSING AUTHORITY | : | |
| BOARD OF COMMISSIONERS, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                            January 20, 2011

Defendants John F. Street, Debra L. Brady, Patrick J. Eiding, and Nellie W. Reynolds (collectively "Defendants") have filed the present Motion to Dismiss the Amended Complaint of Plaintiff Carl R. Greene ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the following reasons, the Motion is granted in the manner as set forth in the accompanying order.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff was hired on March 3, 1998 to serve as the Executive Director of the Philadelphia Housing Authority ("PHA"). (Am. Compl. ¶ 13.) On March 29, 2007, Plaintiff

---

[1] Defendant Jannie L. Blackwell did not join in this Motion and so the Court's Memorandum and Order have no effect on Plaintiff's claims against her.

signed a new employment agreement ("the Agreement") with PHA, which provided a base salary of $275,000, annual incentive compensation of 15% of that salary, and cost of living adjustments.  (Id. ¶¶ 15-17; Id. Ex. A, Employment Agreement between PHA and Carl R. Greene ("Agreement") ¶ 2(a)-(c).)  PHA could terminate the Agreement immediately for cause,[2] or without cause by providing Plaintiff ninety days' notice in advance.  (Agreement ¶ 8(a), 8(c).)

In August of 2010, a series of newspaper articles reported that Plaintiff had defaulted on his mortgage, was subject to federal tax liens, and had been accused of sexual harassment by several former PHA employees.  (Am. Compl. ¶¶ 24-26.)  Subsequent to these reports, on August 26, 2010, the PHA Board of Commissioners ("the Board") placed Plaintiff on administrative leave, and adopted a resolution authorizing an independent investigation of the sexual harassment allegations.  (Id. ¶¶ 32-36; Id. Ex. H.)  Defendant Street, as Chairman of the Board, was responsible for overseeing the investigation, which was to be completed thirty days after the adoption of the resolution.  (Id. ¶¶ 36-38.)  On September 23, 2010, the Board voted 4-1 in favor of terminating Plaintiff.  (Id. ¶ 71.)

---

[2] The Agreement defines "cause" as follows:

(i) A material act or acts of dishonesty on MR. GREENE'S part, which is criminal in nature, intended to result directly or indirectly to MR. GREENE'S substantial gain or personal enrichment at PHA's expense, and which results in demonstrable material injury and damage to PHA;
(ii) MR. GREENE'S willful and intentional misconduct, recklessness, gross negligence and failure to substantially perform his duties hereunder, other than a failure resulting from MR. GREENE'S incapacity or illness, if MR. GREENE'S willful and intentional misconduct, recklessness, gross negligence and failure results in demonstrable material injury and damage to PHA; or
(iii) Lack of funding.

(Agreement ¶ 8(a).)

Plaintiff filed his Amended Complaint in this Court on October 6, 2010, alleging: (1) denial of procedural due process; (2) breach of contract; (3) defamation; and (4) false light invasion of privacy. (Id. ¶¶ 84-111.) Counts One and Two were brought against all Defendants, while Counts Three and Four were brought against Defendant Street only. (Id.) Defendants filed the present Motion to Dismiss on October 22, 2010, Plaintiff filed his Response in Opposition on November 12, 2010, and Defendants filed a Reply on November 19, 2010.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8

marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III. DISCUSSION

Plaintiff's Amended Complaint includes claims for deprivation of a property interest without due process, breach of contract, defamation, and false light invasion of privacy. In addition, Plaintiff argues in his Response in Opposition that the Board deprived him of his liberty

4

interest in reputation without due process. (Pl.'s Resp. Opp'n at 14-16.) This claim was not included in his Amended Complaint, but the Court will address it in addition to those in the Amended Complaint.

> **A. Whether Plaintiff has Stated a Claim for Deprivation of a Property Interest Without Due Process of Law**

In order to establish a claim for a procedural due process violation pursuant to 42 U.S.C. § 1983, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). To establish deprivation of a property interest in a job, a plaintiff "must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). Furthermore, when a party's relationship with a state entity is governed by a contract, a property right only exists

> (1) where "the contract confers a protected status, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits'"; or (2) where "the contract itself includes a provision that the state entity can terminate the contract only for cause."

Linan-Faye Const. Co., Inc. v. Hous. Auth. of City of Camden, 49 F.3d 915, 932 (3d Cir. 1995) (quoting Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991)).

Here, Plaintiff argues that because he was an employee who could be terminated "for cause," he had a property interest in his job and was entitled to procedural due process. (Am.

5

Compl. ¶¶ 84-90.) Plaintiff claims he was deprived of these due process rights when the Board fired him without providing formal notice and an opportunity to be heard. (Id.) The Court disagrees. A contract with a state entity does not give rise to a property right merely because it states that the employee may be terminated for cause. Rather, as the Third Circuit has made clear, a property interest is created when the contract can be terminated *only* for cause. Linan-Faye, 49 F.3d at 932. In this case, although the Agreement allowed PHA to terminate Plaintiff immediately for cause, it also stated that PHA could terminate Plaintiff without cause by giving him ninety days' notice. (Agreement ¶ 8(a), 8(c).)

Despite the fact that he could be fired without cause, Plaintiff argues that "property interests protected by procedural due process are not limited to those rights created by statute or written contracts." (Pl.'s Resp. Opp'n at 11.) In support of this argument, he cites Stana v. Sch. Dist. of the City of Pittsburgh, 775 F.2d 122 (3d Cir. 1985) and Perry v. Sinderman, 408 U.S. 593 (1972). In Stana, the appellant was an applicant for a teaching position whose name was removed from a list of eligible candidates because of a negative teaching evaluation. 775 F.2d at 124-25. The appellant was not given notice or an opportunity to address the negative evaluation. Id. The Third Circuit held "that remaining on the eligibility list, which was a prerequisite to a teaching position, was a 'legitimate entitlement' that the School District had created through the policies it promulgated to implement the state statute on teacher hiring." Id. at 126.

Perry involved a professor whose one-year contract was not renewed after ten years of employment in a state college system. 408 U.S. at 594-95. Though the school lacked a formal

tenure system, the respondent argued that there was a "de facto tenure program"³ which entitled him to "a procedural due process right to a statement of reasons and a hearing before college officials upon their decision not to retain him." Id. at 600-01. The Supreme Court agreed, holding that the respondent, "who has held his position for a number of years, might be able to show from the circumstances of this service – and from other relevant facts – that he has a legitimate claim of entitlement to job tenure." Id. at 602.

The present case is entirely distinguishable. In Stana, there was no contract between the appellant and the state entity, and so the Third Circuit had to look to other sources – such as the school district's existing policies and practices – to determine whether a property interest was at stake. Perry involved a question as to whether the respondent had tenure status, which would have potentially created rights beyond those included in his one-year employment contract. In the present case, however, all of the rights, duties, and expectations of both parties were embodied in the Agreement, and there is no evidence of any supplements to the Agreement – like the tenure program in Perry – that created any additional entitlements.⁴ Plaintiff was aware

---

³ The college's official Faculty Guide included the following provision, upon which the respondent in Perry relied to establish the existence of de facto tenure:

> "Teacher Tenure: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work."

Perry, 408 U.S. at 600.

⁴ Plaintiff contends that because the Board had historically been pleased with his work and had known about previous sexual harassment allegations against him, "he had developed an understanding of his right to continued employment absent cause as defined in the contract." (Pl.'s Resp. Opp'n at 13.) Even assuming this is true, it is merely "a unilateral expectation of continued employment," which does not create a property right. Elmore, 399 F.3d at 282.

7

during the entirety of his employment that he could be fired with or without cause. If Defendants' reasons for terminating Plaintiff did not satisfy the contractual definition of "cause," or if Defendants did not provide the requisite ninety-day notice to fire Plaintiff without cause, such conduct may have given rise to a breach of contract claim. See Goodmann v. Hasbrouck Heights Sch. Dist., No. CIV.A.04-5861, 2007 WL 1827163, at *6 (D.N.J. June 25, 2007) (defendant's "alleged failure to provide the appropriate notice did not deprive Plaintiff of due process, but rather such failure may, at most, support a claim for breach of contract under state law"). Since the "termination without cause" provision was included in the Agreement, however, the Court finds that Plaintiff's position as Executive Director of PHA was not a constitutionally protected property right. Plaintiff's procedural due process claim is therefore dismissed.[5]

### B. Whether Plaintiff May Amend the Amended Complaint to Include a Claim for Deprivation of a Liberty Interest in Reputation without Due Process of Law

The Supreme Court has held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). When notice and an opportunity to be heard are not provided, a plaintiff may bring "a due process claim for deprivation of a liberty interest in reputation." Hill, 455 F.3d at 236 (citation omitted). To prevail, the plaintiff must demonstrate "a stigma to his reputation plus deprivation of some

---

[5] Defendants also argue that Plaintiff's due process claim fails because they are shielded by qualified immunity. (Defs.' Mot. Dismiss 10-11.) As the claim is being dismissed due to Plaintiff's lack of property interest in his employment, the Court declines to consider the merits of this argument.

additional right or interest." Id. This is referred to as the "stigma-plus" test, and in the context of public employment, it "has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." Id. (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)). Notably, the Third Circuit has held that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." Hill, 455 F.3d at 238.

Though a claim for deprivation of liberty interest in reputation does not appear in the Amended Complaint, Plaintiff raises the issue in his Response in Opposition, and requests the opportunity to include the claim through another amendment. (Pl.'s Resp. Opp'n at 16 n.3.) This is, of course, not the proper procedural manner in which to request an amended complaint and the court will not therefore grant the request. However, since the court will be granting leave to file a motion to amend, a discussion of this issue follows.

Essentially, Plaintiff alleges that Defendant Street falsely accused him of being a "true serial sexual harasser" who covered-up his misconduct in order to deceive the Board. (Id. at 16.) Plaintiff argues that because PHA terminated him without providing an opportunity to rebut the statements made by Defendant Street, his procedural due process rights were violated. (Id.)

Defendants respond that even if Plaintiff is given leave to amend, the claim for deprivation of liberty interest in reputation would still fail because Plaintiff did not request a name-clearing hearing before he filed his lawsuit. (Defs.' Reply 7-10.) In support of this argument, Defendants cite to a previous case decided in this District, Dean v. City of Coatesville,

9

No. CIV.A.09-4399, 2010 WL 1005142 (E.D. Pa. Mar. 17, 2010). In Dean, the court stated the following:

> Our Court of Appeals has not ruled on whether a plaintiff must request a name-clearing hearing, but the better part of the district court cases in this Circuit, along with the decisions of the Fourth and Fifth Circuits, have held that a plaintiff must have requested a name-clearing hearing to proceed on a procedural due process claim in this context. Quinn v. Shirey, 293 F.3d 315, 325 (4th Cir. 2002); Howze v. City of Austin, 917 F.2d 208 (5th Cir. 1990); Rosenstein v. City of Dallas, 876 F.2d 392, 395 (5th Cir. 1989); Puchalski v. School District of Springfield, 161 F. Supp. 2d 395, 406 (E.D. Pa. 2001); O'Connell v. County of Northampton, 79 F. Supp. 2d 529, 535 (E.D. Pa. 1999); but see Erb v. Borough of Catawissa, No. 07-1961, 2009 WL 3182005 at *6 n.8 (M.D. Pa. Sept. 30, 2009) (noting that the Third Circuit has not ruled on whether a request for a name-clearing hearing was necessary to proceed on a procedural due process claim and declining to require it).

Id. at *4.

While Defendant's reliance on this passage from Dean is well-founded, in a footnote to its opinion in Hill v. Borough of Kutztown, supra, the Third Circuit stated that "[i]t is not clear from the complaint whether [the plaintiff] requested any sort of name-clearing hearing, but we have not held that he was required to do so." Hill, 455 F.3d at 239 n.19. From this language, it could be argued that the Third Circuit has found that the issue of whether or not a plaintiff personally requests a name-clearing hearing is irrelevant to a due process claim, and has implicitly chosen not to follow the rule in the Fourth and Fifth Circuits.[6] Whether this is even an issue in this case is unclear because the amended complaint Plaintiff proposes is not before us. The Court therefore grants Plaintiff leave to file a motion to amend. Once the claim for deprivation of liberty interest has been properly pleaded, the Court will, if necessary, decide

---

[6] All of the cases cited in Dean to support the rule that a plaintiff must request a name-clearing hearing were decided before Hill. Erb, the one case cited in Dean for the opposite proposition, was decided after Hill, and relies on Hill's footnote 19 as evidence that the Third Circuit would not require such a request. Erb, 2009 WL 3182005, at *6 n.8.

10

whether Plaintiff has stated a claim upon which relief can be granted.

C. **Whether Plaintiff has Stated a Claim for Breach of Contract**

A lawsuit brought against a government official in his or her official capacity constitutes "'another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 690 n.55 (1978)). Thus, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. (citation omitted). It therefore follows that "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." Id.

Plaintiff has not named PHA as a defendant in this case. Rather, the Amended Complaint names the five Board members "doing business as" the PHA Board of Commissioners. Plaintiff invokes the rule in Graham to argue that by suing the Board members in their official capacities, he has effectively named PHA. (Pl.'s Resp. Opp'n at 19.) Defendants claim that because the contract was between Plaintiff and PHA, not the Board members themselves, Plaintiff has failed to state a claim against them for breach of contract. (Defs.' Mot. Dismiss at 11-12.) They contend that the rule set forth in Graham has only been applied in cases involving the Constitution or federal law, and that Plaintiff's attempt "to plead his breach of contract claims against the PHA Board members is not only contrary to the law, but sets the stage for confusion, inefficiency and prejudice to the defendants." (Defs.' Reply at 12-13.)

Though it is true that the official-capacity rule has historically occurred in the

11

constitutional context, nothing in the Supreme Court's jurisprudence seems to preclude its application to a state law contract claim.  On the other hand, Plaintiff's Amended Complaint is ambiguous as to whether Defendants are being sued in their official or individual capacities.  The Amended Complaint states that, at all relevant times, each Defendant acted in his or her capacity as a Board member under color of state law.  (Am. Compl. ¶¶ 8-12.)  In his Response in Opposition, however, Plaintiff states that he "has sued the Board members in both their official and individual capacities as evidenced by the identification of each Defendant individually in the caption and by reference to them 'doing business as' the Board of Commissioners."  (Pl.'s Resp. Opp'n at 27 n.6.)  Nevertheless, merely identifying a party by his or her individual name is not the same as indicating that the party is being sued in an individual capacity.  Moreover, to say that Defendants were "doing business as" the board of a government agency is not an accurate description of their activities.  Rather, "d/b/a" is a signal used in the corporate or business context to indicate that the "business may be licensed or incorporated under a different name."  BLACK'S LAW DICTIONARY (9th ed. 2009), d/b/a.

In light of these ambiguities, the Court will grant Defendants' Motion to Dismiss the breach of contract claim, but Plaintiff may file a motion to amend the complaint with respect to this issue. Plaintiff's proposed Second Amended Complaint must specifically designate which Defendants are being sued for each claim, and clearly indicate whether they are being sued in their individual capacity and/or their official capacity, and join PHA as a party to this litigation pursuant to Federal Rule of Civil Procedure 19(a)(2).

> **D.** **Whether Pennsylvania's High Public Official Immunity Doctrine Bars Plaintiff's Defamation and False Light Invasion of Privacy Claims against Defendant Street**

In Pennsylvania, the doctrine of high public official immunity

> "is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction."

Heller v. Fulare, 454 F.3d 174, 177 (3d Cir. 2006) (quoting Matson v. Margiotti, 88 A.2d 892, 895 (Pa. 1952), overruled on other grounds by Commonwealth v. Schab, 383 A.2d 819 (Pa. 1978)). This form of absolute privilege is "'designed to protect the official from the suit itself, from the expense, publicity, and danger of defending the good faith of his public actions before the jury.'" Lindner v. Mollan, 677 A.2d 1194, 1195-96 (Pa. 1996) (quoting Montgomery v. City of Philadelphia, 140 A.2d 100, 103 (1958)). The doctrine also serves the deeper purpose of protecting "society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business." Montgomery, 140 A.2d at 103.

Whether or not a public official is protected by the privilege depends "upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Id. at 105 (citations omitted). Once a court has determined that high public official status applies, it considers two factors to determine whether the allegedly defamatory statements were made within the scope of the official's authority: "'(1) the formality of the forum in which the words were spoken or published; and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages for the defamatory utterance.'" Cornell Cos., Inc. v. Borough of New Morgan, 512 F. Supp. 2d 238, 275 (E.D. Pa. 2007) (quoting Osiris Enters. v. Borough of Whitehall, 877 A.2d 560, 568 (Pa. Commw. Ct. 2005)).

In this case, Plaintiff claims that Defendant Street defamed him "in press conferences and

13

other correspondence with members of the press, including unverifiable statements that 'other women' had come forward to complain about Mr. Greene, references to 'others whose identities we may never know' as 'target females' of Mr. Greene, and comparisons . . . to a drug addict and sex addict." (Am. Compl. ¶ 101.)  In addition, Plaintiff alleges that Defendant Street publicly characterized previous sexual harassment claims in a manner that placed him "in a false light and that is highly offensive to a reasonable person.  Namely, Chairman Street paraded allegations of sexual harassment before the news media, labeled Mr. Greene a 'serial sexual harasser,' and repeatedly referenced other unnamed and unidentifiable women who he claims reported allegations of sexual harassment." (Id. ¶ 107.)  Defendant Street responds that as Chairman of PHA's Board of Commissioners, he is a high public official and therefore immune from the defamation and false light invasion of privacy claims.[7] (Defs.' Mot. Dismiss at 12-19.)  In the alternative, he also argues that the claims against him are barred by sovereign or governmental immunity.  (Id. at 21-22.)

Although it does not appear that any courts have previously considered whether the chairman of a housing authority board is a high public official,[8] application of the analysis set

---

[7] High public official immunity applies to false light invasion of privacy claims as well as claims for defamation.  McErlean v. Borough of Darby, 157 F. Supp. 2d 441, 446 (E.D. Pa. 2001).

[8] In Lindner, the Pennsylvania Supreme Court catalogued cases describing the various government positions to which the privilege has applied:  Jonnet v. Bodick, 244 A.2d 751 (Pa. 1968) (Township Supervisor); Montgomery, 140 A.2d 100 (1958) (Deputy Commissioner of Public Property and City Architect); Matson, 88 A.2d 892 (Pa. 1952) (Pennsylvania Attorney General); Suppan v. Kratzer, 660 A.2d 226 (Pa. Commw. Ct. 1995) (Mayor and Borough Council President); Mosley v. Observer Publ'g Co., 619 A.2d 343 (Pa. 1993) (County Attorney); Factor v. Goode, 612 A.2d 591 (Pa. Commw. Ct. 1992) (Mayor of Philadelphia and Revenue Commissioner of Philadelphia); Rok v. Flaherty, 527 A.2d 211 (Pa. Commw. Ct. 1987) (City Comptroller); Freach v. Commonwealth, 354 A.2d 908 (Pa. Commw. Ct. 1976) (Superintendent

14

forth in Montgomery, noted above, demonstrates that the privilege applies to Defendant Street. In Montgomery, one of the most important factors cited by the Pennsylvania Supreme Court in deciding whether an individual is a high public official is whether the official has policy-making authority. Montgomery, 140 A.2d at 105. Here, the State of Pennsylvania has conferred upon its housing authorities a remarkably extensive array of powers. A brief, non-exhaustive list of PHA's power includes the ability to investigate housing conditions and methods to improve those conditions; operate and oversee housing projects; purchase, lease, or sell real property, or acquire it through eminent domain; invest funds; make and execute contracts; make and amend rules, regulations, and resolutions; conduct examinations and investigations, hear testimony, and take proof; and authorize its members "to conduct hearings and to administer oaths, take affidavits, and issue subpoenas." 35 PA. CONS. STAT. § 1550(a)-(bb). Clearly, PHA has a significant degree of policy-making authority, and Defendant Street, as Chairman of PHA's Board of Commissioners, has substantial influence in determining how that authority is exercised. The Court therefore finds that Defendant Street is a high public official, and must now consider whether his statements about Plaintiff were made during the course of his official duties.

One of the main reasons for the high public official immunity doctrine is to protect the public's right to be informed; without the privilege, public officials may speak less candidly about government matters for fear of legal recrimination. Montgomery, 140 A.2d at 103. To this

---

of the Parole Division of the Board of Probation and Parole, District Attorney, and the Assistant District Attorney of Delaware County), aff'd in part, 370 A.2d 1163 (Pa. 1977); and McCormick v. Specter, 275 A.2d 688 (Pa. 1971) (District Attorney). Lindner, 677 A.2d at 1198-99.

15

end, courts have held that a high public official's statements are privileged when made during a borough council meeting, Lindner, 677 A.2d at 1199, at a press conference, McCormick, 275 A.2d at 689, or in response to a reporter's questions. Montgomery, 140 A.2d at 105. Here, the Amended Complaint cites comments Defendant Street made to journalists reporting on PHA's investigation into the sexual harassment charges against Plaintiff, (Am. Compl. ¶¶ 31, 46, 51; id. Exs. G, K, & M), at a press conference (id. ¶ 52; id. Ex. N), and during Board meetings. (Id. ¶¶ 43, 62, 77; Id. Exs. S & U.) Plaintiff also attributes to Defendant Street the Board's unsigned investigation report. (Id. ¶¶ 67-70; Id. Ex. T.)

The Court concludes that all of Defendant Street's statements were made pursuant to his authority as Board chairman. Because of PHA's significant role in shaping Philadelphia's housing policy, the sexual harassment allegations made against Plaintiff – as well as his future as Executive Director of PHA – were clearly a matter of public concern. As the person chosen to lead the investigation into Plaintiff's alleged misconduct, Defendant Street was acting in his official capacity when he spoke about the matter at Board meetings or corresponded with various media outlets to update them on the Board's findings.[9] The defamation and false light invasion of privacy claims against Defendant Street are dismissed, and it is therefore unnecessary to

---

[9] Plaintiff contends that Defendant Street was not acting in his capacity as a public official at the time he made his statements, and cites to three cases in support of this argument: Lamb Found. v. N. Wales Borough, No. CIV.A.01-950, 2001 WL 1468401, (E.D. Pa. Nov. 16, 2001); Angelilli v. Borough of Conshohocken, No. CIV.A.96-3391, 1996 WL 663871, (E.D. Pa. Nov. 15, 1996); Biggans v. Foglietta, 170 A.2d 345 (Pa. 1961). (Pl.'s Resp. Opp'n at 21-23.) In Lamb and Angelilli, the pleadings were vague as to whether the allegedly defamatory statements were made pursuant to the defendants' official duties, and so the courts denied the defendants' motions to dismiss. Lamb, 2001 WL 1468401, at *11; Angelilli, 1996 WL 663871, at *7. In Biggans, the complaint itself demonstrated that the defamatory comments were not made in an official capacity. 170 A.2d at 347. As set forth above, there is no ambiguity in this case as to whether Defendant Street's comments were made pursuant to his duties as Board chairman.

consider Defendant's sovereign or governmental immunity argument.

IV.     **CONCLUSION**

For all of the foregoing reasons, the Court finds that Plaintiff did not have a property interest in his position as Executive Director of PHA, and so his procedural due process claim is dismissed. In addition, because Defendant Street is protected by the doctrine of high public official immunity, Plaintiff's claims for defamation and false light invasion of privacy are also dismissed. Defendants' Motion to Dismiss Plaintiff's breach of contract claim is also granted.