IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL R. GREENE, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| JOHN F. STREET, Chairman | : NO. 10-4529 |
| DEBRA L. BRADY, | : |
| PATRICK J. EIDING, | : |
| NELLIE W. REYNOLDS, and | : |
| PHILADELPHIA HOUSING AUTHORITY, | : |
| | : |
| Defendants. | : |

**MEMORANDUM**

BUCKWALTER, S.J.                                                                                              August 29, 2012

Defendants John F. Street, Debra L. Brady, Patrick J. Eiding, Nellie W. Reynolds, and Philadelphia Housing Authority have filed the present Motion for Summary Judgment. For the following reasons, the Motion is granted in part and denied in part as set forth in the accompanying Order.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Carl R. Greene ("Plaintiff") was hired on March 3, 1998 to serve as Defendant Philadelphia Housing Authority's ("PHA") Executive Director. (Sec. Am. Compl. ¶ 13; Defs.' Answer Sec. Am. Compl. ("Answer") ¶ 13.) At the time Plaintiff commenced his lawsuit, Defendant PHA's Board of Commissioners ("the Board") consisted of Defendants Street, Brady, Eiding, and Reynolds, as well as Jannie L. Blackwell, who is no longer a defendant in this case.[1]

---

[1] Ms. Blackwell was dismissed from this action on June 22, 2011. (See Greene v. Street, No. Civ.A.10-4529, Docket No. 39.)

(Sec. Am. Compl. ¶¶ 8-12; Answer ¶¶ 8-12.) On March 29, 2007, Plaintiff signed a new employment agreement ("the Employment Agreement") with Defendant PHA, which provided a base salary of $275,000, annual incentive compensation of 15% of that salary, and cost of living adjustments. (Pl.'s Resp. Opp'n, Ex. A, Employment Agreement between PHA and Carl R. Greene ("Employment Agreement") ¶ 2(a)-(c).) Defendant PHA could terminate the Employment Agreement immediately for cause, or without cause by providing Plaintiff ninety days' notice in advance. (Employment Agreement ¶ 8(a), 8(c).)

In August of 2010, a series of newspaper articles reported that Plaintiff had defaulted on his mortgage, was subject to federal tax liens, and had been accused of sexual harassment by several former PHA employees. (Sec. Am. Compl. ¶¶ 24-26; Answer ¶¶ 24-26.) At a meeting held on August 26, 2010, the Board placed Plaintiff on administrative leave, and adopted a resolution authorizing an independent investigation of allegations pertaining to Plaintiff's professional conduct. (Sec. Am. Compl. ¶¶ 32-36; Answer ¶¶ 32-36, Pl.'s Resp. Opp'n, Ex. D.) Defendant Street, as Chairman of the Board, was responsible for overseeing the investigation, which was to be completed thirty days after the adoption of the resolution. (Pl.'s Resp. Opp'n, Ex. D.) On September 23, 2010, the Board voted 4-1 in favor of terminating Plaintiff. (Sec. Am. Compl. ¶ 73; Answer ¶ 73.)[2]

Plaintiff initiated this action on September 7, 2010 and filed an Amended Complaint on October 6, 2010. On October 22, 2010, Defendants moved to dismiss the Amended Complaint. The Court granted the motion on January 20, 2011, while allowing Plaintiff to file a Second

---

[2] Ms. Blackwell was the only Board member who voted against the termination resolution. (Sec. Am. Compl. ¶ 74; Answer ¶ 74.)

Amended Complaint. The Second Amended Complaint was filed on March 11, 2011, and Defendants again moved to dismiss on March 25, 2011. The motion was granted in part and denied in part on June 22, 2011, leaving two causes of action: (1) Plaintiff's claim for deprivation of liberty interest in reputation without due process of law against Defendants Street, Brady, Eiding, and Reynolds in their individual capacities (Count I); and (2) Plaintiff's claim for breach of the Employment Agreement against Defendant PHA (Count II).

Defendants filed the present Motion for Summary Judgment on June 4, 2012, and Plaintiff filed his Response in Opposition on June 21, 2012. Defendants then filed a Reply Brief on July 2, 2012, and Plaintiff filed a Sur-Reply on July 11, 2012.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cnty. of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v.

Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Summary judgment may be granted when "the evidence is merely colorable . . . or is not significantly probative." Id. at 249-50 (citations omitted).

## III. DISCUSSION

Defendants have moved for summary judgment on Plaintiff's claim for deprivation of liberty interest in reputation without due process of law as well as his breach of contract claim. The Court considers the two causes of action separately.

### A. Deprivation of Liberty Interest in Reputation Without Due Process of Law

In order to establish a claim for a procedural due process violation pursuant to 42 U.S.C. § 1983, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of

4

Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).  The Supreme Court has held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."  Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971).

When notice and an opportunity to be heard are not provided, a plaintiff may bring a procedural due process claim "for deprivation of a liberty interest in reputation."  Hill, 455 F.3d at 236 (citations omitted).  To prevail, the plaintiff must demonstrate "a stigma to his reputation plus deprivation of some additional right or interest."  Id. (citing Paul v. Davis, 424 U.S. 693, 701 (1976)).  This is referred to as the "stigma-plus" test, and in the context of public employment, it "has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest."  Id. (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)).

Earlier in this litigation, this Court held that a plaintiff must request a name-clearing hearing before bringing a liberty interest claim.  See Greene v. Street, No. Civ.A.10-4529, 2011 WL 2517144, at *4-5 (E.D. Pa. June 22, 2011).  The Court was particularly persuaded by the discussion of the issue in Schlichter v. Limerick Twp., No. Civ.A.04-4229, 2005 WL 984197, at *8 (E.D. Pa. Apr. 26, 2005).  There, the district court noted that a deprivation of liberty interest in reputation claim "arises not from the defamatory or stigmatization conduct *per se* but from the denial of a name-clearing hearing. . . . It follows that to sustain a § 1983 stigmatization claim, an aggrieved employee must plead and prove that he timely requested a name-clearing hearing and that the request was denied."  Id. at *8 (citations omitted).

In his Second Amended Complaint, Plaintiff alleges that Defendants Street, Brady, Eiding, and Reynolds defamed him during the course of his termination and failed to give him notice and an opportunity to be heard. (Sec. Am. Compl. ¶ 91.) Among the allegedly false statements made were Defendant Street's comments that Plaintiff engaged in a cover-up to hide information from the Board, was a "serial sexual harasser," was comparable to a drug or sex addict, violated Board policies, failed to perform his duties, and abandoned his job. (Id. ¶ 97.)[3] According to Plaintiff, although the Board members were aware that he was unavailable to participate in the investigation into his conduct, they ignored his attorney's offer to work with them to resolve the issue and did not respond to his counsel's complaints about their violations of Plaintiff's rights. (Id. ¶ 98.) Plaintiff alleges that these actions deprived him of his liberty interest in reputation without due process of law. (Id.)

Defendants argue that they are entitled to summary judgment on the liberty interest claim because Plaintiff did not request a name-clearing hearing. (Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") 16-22.) They contend that Plaintiff's proffered evidence consists solely of letters from and remarks by his counsel. (Id. at 17.) According to Defendants, the purpose of these communications was to try and protect Plaintiff's position at PHA and to object to any adverse employment actions taken by the Board; they do not articulate a request for a hearing to refute stigmatizing comments. (Id. at 18.) Plaintiff responds that, although he never actually used the precise words "name-clearing hearing," summary judgment should be denied because there is a question of fact as to whether his counsel asked the Board for an opportunity to clear

---

[3] The Second Amended Complaint does not identify any defamatory comments made by Defendants Brady, Eiding, or Reynolds.

his name. (Pl.'s Resp. Opp'n 10-11.) The Court considers each communication cited by the parties to determine whether Plaintiff has submitted sufficient evidence of a request for a name-clearing hearing.

First, on August 24, 2010, Plaintiff's counsel sent a letter to Defendant Street which states as follows:

> This is to advise you that I represent Carl H. Greene [sic]. Mr. Greene is presently undergoing medical diagnosis and treatment outside Pennsylvania. Until such time as that process has been completed, I would ask that the Board take no position regarding Mr. Greene's status with the Authority. I expect that Mr. Greene will remain under medical care for approximately three (3) weeks.

(Pl.'s Resp. Opp'n, Ex. B.) This letter merely asks Defendant Street to refrain from making any decisions regarding Plaintiff's employment until Plaintiff returned from receiving medical care. It does not indicate that Plaintiff believed that comments made by Defendants caused him reputational harm, or that he sought a forum in which to address those comments.

Next, at the Board meeting held on August 26, 2010, Plaintiff's counsel addressed the Board and made the following statement:

> Mr. Chair, Members of the Board, my name is Cliff Haynes [sic] and I'm a lawyer and I represent—I believe all of you know I represent Carl Greene. I came here today because I wanted to hear what it was that you intended to do. I came here today because some of you don't know me and I wanted to be able to have you—have the opportunity to recognize my face and know who I am.
> And I came here today to make clear to all of you that Carl is presently undergoing medical diagnosis and treatment, as I represented to you in a letter. And he will continue to do that for a period of time. I would ask you, I would ask whoever it is that is designated as an investigator, and obviously members of the public and the media, to respect Carl's privacy with respect to his medical diagnosis and his medical care. Until such time as he returns to the City of Philadelphia he will not be available to anyone for the purposes of interviews or decisions, but I will be happy to the extent I'm able to do that, as an attorney representing a client, to make myself available to you and to provide you with information if it is appropriate under the circumstances.

(Pl.'s Resp. Opp'n, Ex. E 22-23.)  This statement essentially reiterates the comments made in Plaintiff's counsel's earlier letter, and again makes no reference to reputational harm. Furthermore, while counsel informed the Board that his client would not be available to participate in the investigation while he received medical care, he did not indicate that Plaintiff sought an opportunity to be heard when he returned.

The third communication at issue is a letter dated August 27, 2010 from Plaintiff's counsel to all members of the Board, and addresses the previous day's meeting:

> I want to follow-up with all of you on several aspects of what transpired at yesterday's public session of the Philadelphia Housing Authority Board.
> First, I reiterate my offer to work with you on resolving the unfortunate salvo of attacks on Carl Greene that has occurred over the past several weeks.
> Second, I want to encourage you to look carefully at the true purpose of HUD's desire to conduct an "audit" and their right to do so.  HUD and the Philadelphia Housing Authority do not always share common interests, and the claims against my client should have nothing to do with HUD's interest in conducting an audit.
> Third, I want to share with you my concerns about two aspects of Mayor Street's statements made to the attending audience and press.  Mr. Greene, as you know, is under contract with Philadelphia Housing Authority and I would urge you to read carefully the entirety of the circumstances under which you may terminate him.  I also ask you to consider carefully the decision to conduct the kind of wide ranging investigation Mayor Street described.  I do not believe that either the Board or the Organization is an investigative entity.  As to the claims that have already been settled by the parties, an investigation would be both unwise and potentially improper.  Furthermore, the Pennsylvania Human Relations Commission and the EEOC are outside agencies charged with the responsibility of conducting investigations of sexual harassment claims, and I am not sure that another governmental agency can preempt or bypass them.  We are going to research all of these issues, and I would urge you to do the same.
> Once Mr. Greene has been released from medical care, I will be happy to sit down with you, either individually or as a group, and try to fashion long-term solutions to any concerns properly involving Mr. Greene's performances at the Philadelphia Housing Authority.

(Pl.'s Resp. Opp'n, Ex. F.)  Here, it is not clear to what Plaintiff's counsel is referring when he

mentions an "unfortunate salvo of attacks." A factfinder examining this letter could only speculate as to what those attacks were, who made them, and whether Plaintiff or his counsel believed them to be false. Furthermore, Plaintiff's counsel merely offers to "work with" the Board to "resolve" these attacks; he does not communicate his client's desire to defend his reputation against defamatory statements. As for Plaintiff's counsel's concerns about statements made by Defendant Street, these refer only to Defendant PHA and the Board's authority to conduct an investigation and terminate Plaintiff. Nowhere in the letter does Plaintiff's counsel address any allegedly false statements made by Defendant Street to which his client wished to respond.

   Next, on August 30, 2010, Plaintiff's counsel again wrote to the Board as follows:

>   I am unaware of who will be representing the Board as you proceed through your "investigation" of Carl Greene. I would appreciate it if you could identify who my contact person is going forward. In the meantime, I am asking you collectively to provide me with the following documents:
>
> •   The Bylaws of Philadelphia Housing Authority;
> •   Any Board policies or guidelines;
> •   Minutes of Board Meetings for the past 5 years;
> •   Any and all documents relating to allegations of sexual abuse by Carl Greene in your possession; and
> •   A complete copy of the "press package" provided to the media last Thursday, August 26, 2010.
>
>   As soon as these documents are available, you may call Lauren Cates Esq., my associate, and we will arrange to have them picked up. I would expect to be able to do that before the week's end.

(Pl.'s Resp. Opp'n, Ex. G.) This is clearly a simple request for documents, and the Court is unable to discern how this letter could be considered a request for a name-clearing hearing.

   On September 2, 2010, Plaintiff's counsel sent to the Board a follow-up letter related to

9

his August 30, 2010 correspondence:

> I have been advised by my associate, Lauren Cates, that the Philadelphia Housing Authority will only release documents requested by us pursuant to a Freedom of Information Act request.
> I find that position rather curious, given that Carl Greene is an employee and the request is from his lawyer. Nonetheless, we will proceed under the Pennsylvania Right to Know Law, 65 P.S. § 67.101 et seq., in order to expedite our request. To that end, a completed Right to Know Request Form is attached.
> I would suggest to the Board that we have acted in a spirit of cooperation to this point. We have offered no protest to your actions or pronouncements. Please do not interpret that approach as either weakness or willingness to allow Mr. Greene to be a pawn in a fight that goes far beyond his conduct.
> To say that Mr. Greene's management approach is a surprise to anyone at PHA would be disingenuous. To assume that allegations of behavior which were settled by PHA and its insurer constitute proof of anything approaching a breach of his contract would be equally misguided. We will not sit back and simply allow you to dictate every aspect of the future with impunity.
> Should you wish to discuss this further—or for that matter simply supply the documents we requested—we will be happy to accept any invitation from your counsel.
> We hope you will proceed, not with shrill cries for Carl's head, but with deliberation and consideration of the law.

(Pl.'s Resp. Opp'n, Ex. H.) The primary purpose of this letter is to express Plaintiff's counsel's displeasure at the Board's refusal to provide the requested documents. It includes an offer to discuss the matter further—if the Board members so desired—but it did not include any language that could reasonably be interpreted as a request for a name-clearing hearing.

Finally, on September 17, 2010, counsel for Plaintiff wrote to the Board one final letter. This document was sent after Plaintiff had filed suit against Defendants,[4] and reads as follows:

> At the August 2010 meeting of the Board, a resolution was passed calling for an investigation of certain allegations made against Carl Greene which is scheduled

---

[4] Defendants contend that this letter cannot serve as a request for a name-clearing hearing because it was sent after Plaintiff commenced his lawsuit. (Defs.' Mem. 20 n.6.) Because the Court finds that the text of the letter itself does not contain such a request, it does not address this argument.

to be completed by September 23, 2010. I am writing you regarding that investigation and any plans you may have to release the results of, or specifically report on, your investigation.

As you know, we have brought suit against the Board because of your actions to constructively terminate Mr. Greene. We do not believe that allegations of a personal nature can constitute a breach of Mr. Greene's contract and your response to claims made by the media is wrong.

A part of your response to the media frenzy was the adoption of a resolution to conduct an investigation of Mr. Greene. The investigation, we are led to believe, is not an independent outside investigation, but rather one conducted by Kafi Lindsay, Chairman Street's personal aide. We do not believe the Board or Ms. Lindsay are equipped to conduct such an investigation. We question the Board's authority to conduct any investigation and we challenge the wisdom of an investigation conducted by you in light of the lawsuit now pending against you and the behavior of your Chairman.

We believe that public statements made by your Chairman evidence that you are not conducting a good faith investigation and are engaged in some sort of diversionary tactic to avoid questions about your own conduct. Your Chairman has reported to the press the existence of other "allegations" which are completely devoid of any factual predicate. That conduct is irresponsible and suggests a level of malice on his part.

Throughout this process, you have ignored the health of Mr. Greene or any right to privacy he may have. You have overlooked your duty to treat allegations as confidential and have all but ignored the possibility that some or all of the charges alleged may be false.

Whatever investigation you have or will complete cannot represent a balanced independent review of the facts. Although you know Mr. Greene has been unavailable while under doctor's care, you also know he is represented by counsel and neither you nor your investigator has made any attempt to contact counsel.

In light of the foregoing, I caution you against any further public statements or releases of information regarding claims made against Mr. Greene. To do so would not only be insensitive, it would constitute further evidence of your disregard for Mr. Greene's rights. Moreover, additional attacks directed against Mr. Greene would not serve either PHA or the people served by the Authority.

This matter has been brought before the Courts and is not an appropriate subject for street-corner press conferences. Should you act in further disregard for Mr. Greene's rights, we will take whatever additional action necessary to control your behavior.

(Pl.'s Resp. Opp'n, Ex. J.) Unlike the previous communications, this letter does at least

suggest that one of the Board members—Defendant Street—made comments that

Plaintiff's counsel believed might be false.  Nevertheless, even if the Court assumes that counsel for Plaintiff was accusing Defendant Street of making false statements about his client, defamatory conduct alone does not give rise to a claim for deprivation of liberty interest in reputation.  Rather, Plaintiff must have requested and been denied a hearing. To the extent that this letter makes any request at all, it is merely to ask the Board to refrain from making any further public statements or releasing any information about Plaintiff.

In sum, because the foregoing communications[5] represent the totality of the evidence cited in support of Plaintiff's assertion that he requested a name-clearing hearing—and because the Court finds that none of the evidence supports that assertion—Defendants Street, Brady, Eiding, and Reynolds's Motion for Summary Judgment on Plaintiff's claim for deprivation of liberty interest in reputation without due process of law is granted.[6]

### B.   Breach of Contract

In Pennsylvania, a plaintiff alleging breach of contract must demonstrate "(1) the

---

[5] Defendants also contend that two other documents—a letter dated August 26, 2010 from Defendant PHA to Plaintiff regarding leave of absence and a letter dated September 20, 2010 from Plaintiff's counsel to the Mayor of Philadelphia—do not constitute requests for a name-clearing hearing.  (Defs.' Mem. 21 n.7.)  Specifically, Defendants assert that a communication *from* Defendant PHA cannot be considered a request by Plaintiff, and that a letter to the Mayor did not put the Board on notice that Plaintiff wished to be heard.  (Id.)  Plaintiff does not respond to these arguments, and the Court agrees with Defendant that neither document contains a request for a name-clearing hearing.

[6] Because the Court is granting summary judgment on the grounds that Plaintiff did not request a name-clearing hearing, it declines to consider Defendants' arguments that the deprivation of liberty interest in reputation claim must fail because Plaintiff was not denied due process and did not identify any damages related to the claim.

existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005) (citation omitted). "To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225-26 (3d Cir. 2003) (quoting ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 668 (3d Cir. 1998)).

Here, Plaintiff alleges that Defendant PHA breached his Employment Agreement by placing him on administrative leave, prohibiting him from contacting PHA employees or accessing PHA's systems, and terminating him without cause. (Sec. Am. Compl. ¶¶ 104-05.) Defendant PHA moves for summary judgment on this claim, arguing that Plaintiff has failed to produce any evidence regarding damages. (Defs.' Mem. 25-26.) Defendant PHA notes that in his responses to interrogatories and request for production of documents, Plaintiff does not specify the amount he is seeking. (Id. at 26; Defs.' Mot. Summ. J., Exs. O & P.)

In response, Plaintiff contends that the Employment Agreement itself describes the damages stemming from his breach of contract claim. (Pl.'s Resp. Opp'n 17.) Specifically, if Plaintiff was terminated without cause, Defendant PHA was obligated to pay him twenty-four months of his salary, a cost of living adjustment, and other benefits. (Id.; Employment Agreement ¶¶ 2, 4, 8(c), 9(a).) Plaintiff calculates the wage loss damages to be approximately $618,750. (Pl.'s Resp. Opp'n 17.) In its Reply Brief, Defendant PHA does not respond to this argument.

While it is not entirely clear why Plaintiff did not simply reference these

contractual provisions in responding to Defendant PHA's discovery requests, the Court agrees that the Employment Agreement provides sufficient evidence of damages for purposes of establishing a breach of contract claim. If a factfinder concludes that Plaintiff was not terminated for cause—an issue which is not presently before the Court—then the terms of the contract itself would allow the factfinder to determine Plaintiff's damages with reasonable certainty. Accordingly, Defendants PHA's Motion for Summary Judgment on Plaintiff's breach of contract claim is denied.

### IV.  CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has failed to present evidence that he requested a name-clearing hearing prior to bringing his claim for deprivation of liberty interest in reputation without due process of law. Therefore, Defendants Street, Brady, Eiding, and Reynolds's Motion for Summary Judgment on this claim is granted. With respect to the breach of contract claim, the Court finds that Plaintiff has submitted sufficient evidence of damages, and therefore denies Defendant PHA's Motion for Summary Judgment.

An appropriate Order follows.